UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 18-539

DAVID J. ADINOLFI, II,

    Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF JUSTICE, an agency of the State of North Carolina, and JOSH STEIN, in his official capacity as Attorney General of the State of North Carolina,

    Defendants.

**COMPLAINT**

NOW COMES PLAINTIFF, through undersigned counsel, and alleges and declares of the Defendants as follows:

### PARTIES

1. Plaintiff David J. Adinolfi, II is a citizen and resident of Wake County, North Carolina.

2. Defendant North Carolina Department of Justice (hereinafter "NCDOJ") is an agency of the State of North Carolina.

3. Defendant Josh Stein is the Attorney General of the State of North Carolina. He is sued in this matter in his official capacity.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

6. Plaintiff has exhausted and sought to exhaust all administrative remedies with respect to the federal claims asserted herein. Plaintiff's claims asserted herein are timely under all applicable statutes of limitation.

## FACTUAL ALLEGATIONS

7. Plaintiff was born in 1968 and is currently 50 years old.

8. Plaintiff is an attorney licensed by the State of North Carolina. Plaintiff was originally licensed as an attorney by the State of New York in 1994. He practiced in New York until 2000. In 2000, Plaintiff was licensed by the State of North Carolina. Plaintiff has practiced law in North Carolina continuously since that time.

9. Plaintiff became employed with NCDOJ as an assistant attorney general in 2000.

10. NCDOJ is divided into several divisions, and within each division of NCDOJ there are sections. Each section is supervised by a "section head." Each division is headed by a Senior Deputy Attorney General, except the criminal division, which since November 2017 has both a Senior Deputy Attorney General and the newly created position of Criminal Bureau Chief.

11. Plaintiff worked in the Revenue Section of the civil division of NCDOJ as an Attorney II from September 2000 to September 2002, and then was promoted to the position of Attorney III in the Special Prosecutions Section of the criminal division. In 2008, Plaintiff was again promoted to Attorney IV in the Special

Prosecutions Section. In September 2012, Plaintiff was promoted to Supervisory Attorney II as the "section head" of the Special Prosecutions Section. Plaintiff's position was stationed in Raleigh, North Carolina.

12. Plaintiff's work performed with NCDOJ has been exemplary. He has received numerous commendations for his work performance, and has received no negative work performance reviews. He has received numerous merit pay increases.

13. Plaintiff's service as section head of the Special Prosecutions section of the Criminal Division of NCDOJ has been exemplary and without negative incident.

14. In November 2017, Defendants initiated a "reorganization" of the criminal division. A decision was made that the Special Prosecutions section would no longer be its own section, and it was absorbed into the Capital Litigation and Federal Habeas section.

15. At that time, Plaintiff was informed by agents of Defendants that he was being demoted, and would no longer be a section head. Plaintiff was demoted from the position of Supervisory Attorney II as section head of Special Prosecutions to the position of Attorney IV under the supervision of the section head of the Capital Litigation section. Plaintiff was asked to be the "team lead" for the Special Prosecutions personnel within the Capital Litigation section, but this was not a formal position and was not equivalent to being a section head. Plaintiff was told that these actions were being done pursuant to the "reorganization" of the criminal division.

3

16. This demotion resulted in a removal of supervisory responsibility, loss of job title, and a reduction in pay grade. No written notice of this demotion was provided to Plaintiff, and Plaintiff was unaware of the reduction in pay grade that accompanied this demotion until after the fact.

17. At or around the time Plaintiff was informed of this demotion in November 2017, Plaintiff was assured by agents of Defendants that, if Special Prosecutions were ever reconstituted as its own separate section of the criminal division, that he would be restored to his position as section head of that section. For that reason, Plaintiff did not institute grievance proceedings at that time to protest the actions against him.

18. In November 2017, Defendants created a new supervisory position over the entire criminal division of NCDOJ called "Criminal Bureau Chief," and hired an attorney under the age of 40 years old into that position.

19. After the November 2017 "reorganization," Plaintiff was required to work as a "line" attorney under the supervision of the head of the Capital Litigation section, and under the supervision of the new Criminal Bureau Chief.

20. The new Criminal Bureau Chief held a number of meetings with groups of personnel within the criminal division after she assumed the new position. At one of these meetings, in approximately January 2018, the Criminal Bureau Chief told the NCDOJ personnel present that they "serve at the pleasure of the AG." Plaintiff was one of the NCDOJ employees present at this meeting.

21. This statement is false, as Plaintiff and other personnel present at the meeting are permanent career employees under the North Carolina Personnel Act, and therefore could only be discharged for just cause and with due process.

22. In March 2018, Defendants reconstituted the Special Prosecutions section as a separate section of the criminal division of NCDOJ, with no written notice to the staff.

23. At that time, Defendants installed the Criminal Bureau Chief (who is under the age of 40 years old) as the section head of the Special Prosecutions section, rather than Plaintiff, in addition to her duties as Criminal Bureau Chief.

24. On or about 14 March 2018, the Criminal Bureau Chief held a meeting with Plaintiff. At this meeting, the Criminal Bureau Chief informed Plaintiff that (a) the Special Prosecutions section was begin reconstituted as a separate section in the criminal division of NCDOJ, (b) that in addition to her duties as Criminal Bureau Chief, she was installing herself as the section head of the newly reconstituted Special Prosecutions section, rather than Plaintiff, (c) that Plaintiff was being transferred to a position in the Law Enforcement Liaison section of the criminal division; and (d) told Plaintiff "why don't you just take this one for the team?"

25. The Law Enforcement Liaison section of the criminal division of NCDOJ handles matters that are entirely different than the types of matters previously handled by Plaintiff during his eighteen years of employment with NCDOJ. The matters handled by the Law Enforcement Liaison section are outside the area of expertise of Plaintiff's work experience.

26. At the 14 March 2018 meeting, Plaintiff expressed his protest to the Criminal Bureau Chief regarding the failure of Defendants to restore him to his position as section head of the Special Prosecutions section, and the transfer of Plaintiff to a position in the Law Enforcement Liaison section not of his choosing where the work would be unfamiliar to him and not within his area of expertise.

27. The Criminal Bureau Chief responded to Plaintiff's protests by telling him, as she had previously at the January 2018 meeting, that he "served at the pleasure of the AG." This statement was false, and was intended to intimidate Plaintiff into accepting the unlawful employment conditions being placed upon him by threatening him with immediate firing without just cause or due process.

28. In the days after the 14 March 2018 meeting, Plaintiff continued to protest the failure of Defendants to restore him to the position of section head of the newly reconstituted Special Prosecutions section, and his transfer to the Law Enforcement Liaison section. In response, agents of Defendants (including the Criminal Bureau Chief) falsely claimed that Plaintiff had in fact not been transferred. Agents of Defendants took this position despite the fact that, in the days after 14 March 2018, Plaintiff was contacted repeatedly in person and in writing by personnel in the Law Enforcement Liaison section and had matters from that section assigned to him to handle. Plaintiff filed grievances with the Human Resources Office of NCDOJ on 28 March 2018 and 8 May 2018.

29. Plaintiff also requested written documentation of his transfer to the Law Enforcement Liaison section and demotion from Special Prosecutions section head. No written documentation has been provided to him by Defendants.

6

30. After the events of 14 March 2018 and the course of events leading up to that date, Plaintiff began to feel physically ill. Plaintiff consulted his physician. On or about 22 March 2018, Plaintiff was diagnosed with high blood pressure in the stroke range and severe anxiety, and was advised by his physician to stop working immediately, or he could suffer a stroke. Plaintiff went out of work on sick leave on or about 22 March 2018, as ordered by his doctor, and has remained out of work on leave since that date. Plaintiff's diagnosis of high blood pressure in the stroke range and severe anxiety was transmitted in writing to agents of Defendants that day.

31. As a result of the actions of Defendants described herein, Plaintiff has been diagnosed with high blood pressure in the stroke range, and has also been diagnosed with severe anxiety, panic, and Adjustment Disorder with Anxiety. Plaintiff never suffered from these conditions or high blood pressure in the stroke range prior to March 2018.

32. As a result of the actions of Defendants described herein, Plaintiff is "disabled" within the meaning of the Americans with Disabilities Act, and has been since at least 22 March 2018.

33. Because of his health conditions and disabilities, Plaintiff on 29 March 2018 sought a reasonable accommodation from Defendants, in the form of a transfer to the Services to State Agencies section of the civil division of NCDOJ. In this position, Plaintiff could handle representation of AOC officials (i.e. judges, district attorneys, magistrates, and their staff members) which he had done for 16 years in the Special Prosecutions Section with considerable success and with the approval of

7

AOC officials. Plaintiff's request for a reasonable accommodation in the form of a transfer to the civil division was substantiated with evidence from his treating physician and mental health professional, as well as by an examination of Plaintiff conducted by a health professional employed by Defendants.

34. On or about 29 June 2018, Defendants denied Plaintiff's request for reasonable accommodation, and informed Plaintiff that his only options were to (a) return to work in the criminal division, or (b) apply for disability. Defendants took this position despite the fact that all the medical and mental health professionals who had examined Plaintiff had stated, in writing, that Plaintiff could not safely work in the criminal division.

35. Upon information and belief, in taking the adverse employment actions against Plaintiff set out herein, Defendants discriminated against Plaintiff because of his age.

36. Upon information and belief, Defendants have taken adverse employment action since 2017 against a number of employees over the age of 40 years old (including Plaintiff) as part of the "reorganization" described herein, and replaced those employees with new hires under the age of 40 years old (and/or used funding from those terminated positions to create new positions wherein the persons hired were under the age of 40 years old).

37. The Special Prosecutions section of NCDOJ is one such example. In that section, four employees (including Plaintiff) who are over the age of 40 years old have been removed from employment in that section since 2017, under the purported "reorganization" described herein. The only new hire in the section is

under the age of 40 years old, and the new section head (the Criminal Division Bureau Chief) who replaced Defendant is also under the age of 40 years old.

38. There are numerous other examples, including, but not limited to the fact that numerous new positions in NCDOJ administration have been created (both lawyer and non-lawyer) which have been filled with hires under the age of 40 years old.

## FIRST CLAIM FOR RELIEF
(Age Discrimination in Violation of ADEA)

39. The allegations of paragraphs 1 through 38 of the Complaint are realleged and incorporated as if fully set out herein.

40. As a person over 40 years of age, Plaintiff is an individual protected by the Age Discrimination in Employment Act ("ADEA").

41. Defendants are employers covered by the requirements of the ADEA.

42. As set out herein, Plaintiff has suffered adverse employment actions by Defendants based on his age, including that he was demoted two times from his position as section head of the Special Prosecutions section of the criminal division of NCDOJ, and replaced as section head by a new hire under the age of 40 years old.

43. As a result of the wrongful conduct of Defendants, Plaintiff is entitled to recover from Defendants compensatory damages, including back pay, front pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary damage in an amount to be determined at trial.

44. Defendants engaged in the wrongful conduct alleged herein willfully and/or in reckless disregard of whether their actions were prohibited, entitling Plaintiff to liquidated and/or punitive damages.

## SECOND CLAIM FOR RELIEF
(ADEA Age Discrimination Based On Hostile Work Environment)

45. The allegations of Paragraphs 1 through 44 are realleged and incorporated as if fully set out herein.

46. As set out herein, Defendants subjected Plaintiff to unwelcome treatment regarding his job responsibilities and work with Defendants, including Defendants' agent telling Plaintiff that he "worked at the pleasure of the AG" when such statement was false and contrary to controlling law, and demoting him twice without any just cause or due process. Plaintiff made clear to Defendants and their agents that such conduct was not welcome.

47. Upon information and belief, this unwelcome and disparate treatment was based on Plaintiff's age.

48. The unwelcome, age-based discrimination to which Defendants subjected Plaintiff was sufficiently severe and pervasive to alter the conditions of his employment and to create a hostile work environment.

49. Plaintiff himself believed that the work environment was hostile, and a reasonable, objective person in Plaintiff's position would conclude the same.

50. As a result of the wrongful conduct of Defendants, Plaintiff is entitled to recover from Defendants compensatory damages, including back pay, front pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of

life, harm to reputation, and other pecuniary damage in an amount to be determined at trial.

51. Defendants engaged in the wrongful conduct alleged herein willfully and/or in reckless disregard of whether their actions were prohibited, entitling Plaintiff to liquidated and/or punitive damages.

### THIRD CLAIM FOR RELIEF
(Age Discrimination in Violation of North Carolina Public Policy)

52. The allegations of Paragraphs 1 through 51 are realleged and incorporated as if fully set out herein.

53. North Carolina law and public policy prohibits discrimination against employees on account of age by Defendants.

54. As set out herein, Defendants have discriminated against Plaintiff on account of his age.

55. As a result of the wrongful conduct of Defendants, Plaintiff is entitled to recover from Defendants compensatory damages, including back pay, front pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary damage in an amount to be determined at trial.

56. Defendants engaged in the wrongful conduct alleged herein willfully and/or in reckless disregard of whether their actions were prohibited, entitling Plaintiff to punitive damages.

### FOURTH CLAIM FOR RELIEF
(Failure to Provide Reasonable Accommodation
In Violation of ADA and ADAAA)

57. The allegations of Paragraphs 1 through 56 are realleged and incorporated as if fully set out herein.

58. Since March 2018, Plaintiff has been and is "disabled" within the meaning of the Americans With Disabilities Act.

59. Since at least 29 March 2018, Defendants have had notice of Plaintiff's disability.

60. On 29 March 2018, Plaintiff sought a reasonable accommodation from Defendants for his disability, in the form of a transfer to the civil division of NCDOJ.

61. Plaintiff's request for reasonable accommodation is substantiated by evidence from his own treating doctors, as well as evidence from an examination of Plaintiff by a health care professional employed by Defendants.

62. Even with his present disability, Plaintiff can perform the job functions of a position within the civil division in NCDOJ.

63. Defendants have refused to make such accommodation. Defendants, by letter to Plaintiff dated 29 June 2018, refused Plaintiff's request for reasonable accommodation in the form of a transfer to civil division, and informed Plaintiff that his only option was to return to a position in the criminal division. Defendants denied such reasonable accommodation despite being in possession of the evidence substantiating Plaintiff's reasonable accommodation request described in Paragraph 61 of this Complaint.

64. Defendants' denial of the reasonable accommodation requested by Plaintiff has led to a needless increase and prolonging of Plaintiff's suffering from

12

his various life threatening conditions, and the needless expenditure of almost all of Plaintiff's accrued leave, which Defendants' agents have notified Plaintiff will run out entirely on 10 December 2018. The end of his accrued leave could lead to plaintiff's dismissal from his employment for unavailability, which fact also increases the danger to Plaintiff and his needless suffering from his life threatening conditions.

65. Defendants' actions constitute a violation of the Americans with Disabilities Act.

66. As a result of Defendant's unlawful conduct, Plaintiff is entitled to injunctive relief, in the form of an order that Defendants provide a reasonable accommodation to Plaintiff as required by law.

67. As a result of the wrongful conduct of Defendants, Plaintiff is entitled to recover from Defendants compensatory damages, including back pay, front pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary damage in an amount to be determined at trial.

68. Defendants engaged in the wrongful conduct alleged herein willfully and/or in reckless disregard of whether their actions were prohibited, entitling Plaintiff to liquidated and/or punitive damages.

### FIFTH CLAIM FOR RELIEF
(Retaliation in Violation of ADA)

69. The allegations of Paragraphs 1 through 68 are realleged and incorporated as if fully set out herein.

70. As set out herein, Defendants have retaliated against Plaintiff after he filed a grievance with the human resources office of NCDOJ, be repeatedly denying his request for a reasonable accommodation under the ADA.

71. As a result of the wrongful conduct of Defendants, Plaintiff is entitled to recover from Defendants compensatory damages, including back pay, front pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary damage in an amount to be determined at trial.

72. Defendants engaged in the wrongful conduct alleged herein willfully and/or in reckless disregard of whether their actions were prohibited, entitling Plaintiff to liquidated and/or punitive damages.

WHEREFORE, Plaintiff prays of the Court as follows:

1) That Plaintiff recover from Defendants compensatory damages in an amount to be determined at trial, for back pay, front pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other pecuniary damage;

2) That Plaintiff recover from Defendants liquidated and/or punitive damages to Plaintiff, as allowable under the ADEA, ADA, and North Carolina law, in an amount to be determined at trial;

3) That Defendants be ordered to provide a reasonable accommodation to Plaintiff under the ADA as required by law;

4) That the costs of this action be taxed to Defendants;

5) That Plaintiff recover from Defendants his reasonable attorneys fees and expenses, as permitted by the ADEA, ADA, and/or other applicable law;

6) For a trial by jury on all issues as allowable by law; and

7) For such other and further relief as the Court may deem just and proper.

This the 6th day of November, 2018.

GAMMON, HOWARD & ZESZOTARSKI, PLLC

/s/ Joseph E. Zeszotarski, Jr.
Joseph E. Zeszotarski, Jr.
State Bar No. 21310
115 ½ West Morgan Street
Raleigh, NC 27601
(919) 521-5878
jzeszotarski@ghz-law.com
Counsel for Plaintiff

# VERIFICATION

I declare under penalty of perjury that I have reviewed the foregoing COMPLAINT, and the matters set out there are true and correct to the best of my knowledge.

This the 6th day of November, 2018.

_____
David J. Adinolfi, II