IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-539-FL

| | |
|---|---|
| DAVID J. ADINOLFI, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH CAROLINA DEPARTMENT OF | )   ORDER |
| JUSTICE, an agency of the State of North | ) |
| Carolina, | ) |
| | ) |
| Defendant.[1] | ) |
| | ) |
| | ) |

This matter is before the court on defendant's motion for judgment on the pleadings (DE 72). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff, an attorney formerly employed by defendant commenced this employment discrimination action on November 6, 2018, and filed the operative second amended complaint on July 8, 2019,[2] asserting claims under the Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), and North Carolina law, on the basis of discrimination,

---

[1] The court constructively amends the caption of this order to reflect dismissal of previously former defendant Josh Stein ("Stein"), in his official capacity as Attorney General of the State of North Carolina, on March 24, 2020.

[2] Hereinafter, all references to the "complaint," or "compl." in citations, in this order, unless otherwise specified, are to the operative second amended complaint.

hostile work environment, failure to accommodate, and retaliation. Plaintiff seeks damages, reinstatement, and reasonable accommodation, along with fees, costs, and trial by jury.

On March 24, 2020, upon defendant's motion to dismiss, the court dismissed plaintiff's ADEA hostile work environment claim, ADA failure to accommodate claim, and state law claims, along with claims against former defendant Stein. The court allowed to proceed plaintiff's ADEA age discrimination claim, including on the basis of an alleged November 2017 demotion (hereinafter the "November 2017 demotion").[3] The court also allowed to proceed plaintiff's ADA retaliation claim.

Defendant filed its answer on April 21, 2020. The court entered case management order on April 22, 2020, with a deadline, now extended, for discovery to conclude by March 1, 2021, and dispositive motions due April 1, 2021.

Defendant filed the instant motion for judgment on the pleadings on September 29, 2020, seeking dismissal of that part of plaintiff's ADEA claim as it relates to plaintiff's alleged November 2017 demotion and his March 2019 termination. Defendant relies upon correspondence between counsel for the parties regarding drafts of the parties' joint discovery plan. Plaintiff responded in opposition on October 20, 2020, and defendant replied on November 3, 2020.

### STATEMENT OF ALLEGED FACTS

The court incorporates herein the summary of alleged facts in the complaint, as set forth in its March 24, 2020, order, for ease of reference:

> Adinolfi was born in 1968, and he became employed by Defendant [NCDOJ] in 2000 as an Assistant Attorney General. The NCDOJ is organized into divisions led by Senior Deputy Attorneys General, and each division is subdivided into sections led by section heads. Adinolfi served in the Civil Division in the Revenue Section from 2000 to 2002. In 2002, he moved to the Special Prosecutions

---

[3] In reaching this result, the court adopted in part and rejected in part the recommendation of a magistrate judge. The court rejected the recommendation of the magistrate judge to dismiss that part of plaintiff's ADEA claim based on the November 2017 demotion as time barred, holding that plaintiff had sufficiently alleged a basis for equitable tolling. (Order (DE 59) at 6-7).

Section within the Criminal Division. In September 2012, Adinolfi was promoted to the position of section head of the Special Prosecutions Section. Adinolfi alleges that he never received negative performance reviews and received numerous merit pay increases. 2d Am. Compl. [DE-39] ¶¶ 7-13.

In November 2017, the NCDOJ underwent a reorganization. The Special Prosecutions Section was absorbed into the Capital Litigation and Federal Habeas Section, and Adinolfi was no longer a section head. He was asked to be the team leader for special prosecutions personnel within the Capital Litigation Section, but it was not a formal position. The reorganization resulted in a loss of supervisory responsibility, loss of job title, and reduction in pay grade for Adinolfi. Adinolfi alleges that he was promised that if the Special Prosecutions Section were ever reformed, he would be reinstituted as the section head. Also in November 2017, the NCDOJ created a new position called the Criminal Bureau Chief, who, in addition to the Senior Deputy Attorney General, supervised the entire Criminal Division. An attorney under the age of forty was hired to fill that position. [Compl. DE-39] ¶¶ 14-18.

In January 2018, the Criminal Bureau Chief held a meeting at which Adinolfi was present, and she stated that NCDOJ personnel "serve at the pleasure of the Attorney General." Adinolfi alleges that the statement was false because he is a permanent career employee under the North Carolina Personnel Act, and he can only be discharged for just cause and with due process. [Id.] ¶¶ 20-21.

In March 2018, the NCDOJ reformed the Special Prosecutions Section and made the Criminal Bureau Chief the section head in addition to her role as Criminal Bureau Chief. The Criminal Bureau Chief informed Adinolfi that he was being transferred to the Law Enforcement Liaison Section of the Criminal Division. Adinolfi alleges that the matters handled by the Law Enforcement Liaison Section are outside of his area of expertise. He objected to the transfer, and the Criminal Bureau Chief again informed him that he "served at the pleasure of the Attorney General." Adinolfi filed grievances with the NCDOJ human resources office, and he requested written documentation of his transfer and demotion, but no documentation was provided to him. 2d Am. Compl. [Id.] ¶¶ 22-29.

Several days after Adinolfi was told he would be transferred, he was diagnosed with high blood pressure in the stroke range and severe anxiety. His physician advised him to stop working immediately, so he went on sick leave and has remained out of work since March 2018. On March 29, 2018, Adinolfi requested an accommodation in the form of a transfer . . . to State Agencies Section of the Civil Division, the ability to work from home two days per week, a reduced caseload, only two criminal appeals per year, and the ability to go to medical appointments and the gym during the week as needed. On June 29, 2018, the NCDOJ denied Adinolfi's request and informed him that his options were to return to his current position in the Criminal Division and take leave as needed for doctor's appointments, transfer to the Public Safety Section and take leave as needed for doctor's appointments, or continue his leave of absence and apply for short term

3

disability. Adinolfi exhausted his leave time, and the NCDOJ terminated his employment on March 18, 2019. 2dAm. Compl. [Id.] ¶¶ 30-35.

On August 7, 2018 Adinolfi filed a charge with the [EEOC] in which he checked the box indicating he claimed he had been discriminated against on the basis of his age in violation of the [ADEA] on March 14 and 15, 2018. [DE-43-3]. The charge form does not indicate a continuing action. Id. It appears from the charge narrative that the charge stems from Adinolfi learning in March 2018 that he would not be restored to the position of Section Head in the Special Prosecutions Division following his November 2017 demotion. Id. Adinolfi also mentions in the narrative that he had "requested a reasonable accommodation for health issues that have emerged from the demotions and transfer (i.e. high blood pressure in the stroke range, adjustment disorder, panic disorder, and extreme anxiety)." Id. at 2. He claims further that the Attorney General's office was attempting to force him to exhaust his sick and vacation time or file for disability then claim he is "unavailable" and terminate him. Id. The EEOC issued a Dismissal and Notice of Rights on August 8, 2018. [DE-43-4].

On November 2, 2018, Adinolfi filed a second EEOC charge in which he checked the boxes claiming disability discrimination and retaliation in violation of the ADA Ex. 4 [DE-43-5]. Adinolfi indicates in his second charge that the earliest the discriminatory acts occurred was March 29, 2018 and the latest was October 17, 2018. The charge does not indicate a continuing action. Id. In his charge narrative, Adinolfi claims he applied for a reasonable accommodation to be transferred to the Civil Division and the Department of Justice denied his request on June 29, 2018, and had offered him positions in the Criminal Division. Id. According to Adinolfi's charge, NCDOJ denied his accommodation request because it believed he did not have a medical disability. Id.  . . . .

On April 22, 2019, Adinolfi filed a third EEOC charge, alleging discrimination on the basis of disability and retaliation in violation of the ADA. Ex. 6 [DE 43-7]. The date of alleged discrimination indicated on the charge form is March 18, 2019. Id. No continuing action is indicated. In his charge narrative, Adinolfi indicates he believes he was "retaliated [against] in the form of being denied a reasonable accommodation . . . , and then being discharged, based on . . . filing two prior EEOC charges . . . , filing a lawsuit and filing ,with the North Carolina Office of Administrative Hearing." Id.  He indicates further that on or about March 18, 2019 he was advised he was being discharged because he had exhausted his leave and [failed] to return to work. Id. On May 8, 2019, the EEOC issued its Notice of Rights by letter to Adinolfi's counsel. [DE-43-8].

(Order (DE 59) at 3-4).

## COURT'S DISCUSSION

A.    Standard of Review

4

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

  B. Analysis

    1. November 2017 Demotion

Defendant seeks dismissal of that portion of plaintiff's ADEA claim premised upon the November 2017 demotion. The court already addressed, however, the viability of plaintiff's ADEA claim premised upon the November 2017 demotion, in denying that part of defendant's motion to dismiss and allowing this portion of plaintiff's claim to proceed forward in its March 24, 2020, order. (See Order (DE 59) at 6-7). Defendant has not provided a basis for reconsideration thereof, and the court adheres to its determination in its March 24, 2020, order.

Nevertheless, defendant argues that the court should consider again the timeliness of this portion of plaintiff's ADEA claim in light of a document attached to defendant's answer,

5

specifically an email chain between plaintiff and Robert Montgomery ("Montgomery"), a former employee of defendant, dated March 15 and March 16, 2018 (hereinafter, the "March 2018 email"). (See Answer, Ex. D (DE 64-5)). Defendant contends the court can consider the March 2018 email in addressing anew the issue of equitable tolling upon its motion for judgment on the pleadings, and that the March 2018 email demonstrates that defendant is entitled to judgment as a matter of law on this issue.

Under the circumstances of this case, consideration of the contents of the March 2018 email, particularly for the truth of the matters asserted therein, is improper upon a motion for judgment on the pleadings. Although the United States Court of Appeals for the Fourth Circuit has not addressed this issue in a published opinion, district courts within this circuit have stated that upon review of a Rule 12(c) motion, the court may consider all pleadings, including answers and attached exhibits, in addition to the complaint. See, e.g., Seneca Ins. Co. v. Shipping Boxes I, LLC, 30 F. Supp. 3d 506, 510 (E.D. Va. 2014); Mendenhall v. Hanesbrands, Inc., 856 F.Supp.2d 717, 724 (M.D.N.C. 2012).

Nevertheless, the court must adhere to the rule that "[a] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve . . . any disputes of fact." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014). Thus, the court must "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor." Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Likewise, consideration of a document outside of the complaint relied upon by a defendant in support of dismissal under Rule 12 "ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015). Moreover, when considering documents "prepared by or for the defendant," the court must take

6

into account that such documents may "reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 168 (4th Cir. 2016).

Here, while plaintiff does not raise an issue with the authenticity of the March 2018 email, it is neither integral to nor explicitly relied upon in the complaint. In particular, the March 2018, email includes communications between plaintiff and Montgomery regarding the November 2017 demotion. (See DE 64-5 at 1-2). The complaint does not reference the March 2018 email and it does not rely upon the contents of the March 2018 email to state a claim regarding the November 2017 demotion. (See, e.g., Compl. ¶¶ 17, 43). In addition, the March 2018 email includes reflections and characterizations by Montgomery regarding the manner in which the November 2017 demotion was communicated to plaintiff. (See DE 64-5 at 1). As such, the court must take into account that it "reflect[s] the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." Goines, 822 F.3d at 168. As such consideration of the March 2018 email for purposes of the instant motion is improper.

Defendant argues that the March 2018 email is "integral to Plaintiff's ability to pursue his cause of action," (Def's Reply (DE 77) at 3), relying upon case law from the United States Court of Appeals for the Second Circuit stating that the court may consider a document "incorporated into the pleading because [it] was integral to [plaintiff's] ability to pursue" his cause of action. (Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)). Whether a document is integral to a plaintiff's ability to pursue his cause of action, however, is not the standard in this circuit for considering a document outside of the complaint on a Rule 12 motion. More precisely, the document must be "integral to . . . the complaint." Zak, 780 F.3d at 606 (emphasis added). While the March 2018 email may be integral in defendant's view to the viability of plaintiff's claim, that

7

is a matter for determination upon a summary judgment motion or at trial, not upon a motion for judgment on the pleadings.

Therefore, that part of defendant's motion seeking dismissal of plaintiff's ADEA claim premised upon the November 2017 demotion is denied.

2.   March 2019 Termination

Defendant moves to dismiss that portion of plaintiff's ADEA claim, if any, based upon plaintiff's March 2019 termination. In response, plaintiff argues that the court should deny any attempt by defendant "to prevent consideration of [plaintiff's] termination as a component of the damages incurred as a result of defendant's ADEA violation." (Pl's Opp. (DE 74) at 17).

As an initial matter, there is no statement in the operative complaint, or in the court's prior orders, that plaintiff has asserted an ADEA claim based upon plaintiff's March 2019 termination. With respect to plaintiff's ADEA claim, the complaint states: "Plaintiff has suffered adverse employment actions by Defendant[] based on his age, including that he was demoted two times from his position as section head of the Special Prosecutions section of the criminal division of NCDOJ, and replaced as section head by a new hire under the age of 40 years old." (Compl. ¶ 43) (emphasis added). While plaintiff asserts an ADA retaliation claim expressly based on his termination in March 2019, (id. ¶ 71), his ADEA claim does not include this basis. (Id. ¶ 43).

By stating "including that he was demoted two times," (id.) (emphasis added), as a basis for his ADEA claim, plaintiff suggests in the complaint that he may want to keep open the possibility of asserting an ADEA claim on other grounds, including his March 2019 termination.[4] To the extent plaintiff seeks to assert such a claim, however, it is not well pleaded, and it has not been exhausted properly. Most critically, "[o]nly those discrimination claims stated in the initial

---

[4]   Plaintiff objects to consideration by the court of emails attached to defendant's motion in addressing the scope of plaintiff's ADEA claim. The court considers for the present analysis only the language of the complaint and plaintiff's argument in his brief, and declines to consider the emails attached to defendant's motion.

8

charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent" lawsuit. Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005). "[A] plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Id.

Here, plaintiff's third EEOC charge, which is integral to plaintiff's complaint, asserts retaliation and disability discrimination in violation of the ADA, but not due to age discrimination in violation of the ADEA. (See DE 43-7 at 1). It also does not state that he had been discharged in March 2019 due to his age. (See id.). Therefore, plaintiff has not exhausted administrative remedies regarding any ADEA claim based upon his termination, and any such claim attempted must be dismissed.

In opposition to this portion of defendant's motion, plaintiff relies upon Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1379 (D.C. Cir. 2008). Schuler, however, is inapposite to the foregoing analysis. There, the plaintiff brought "a class-action pattern or practice ADEA claim arising out of [a corporate defendant's] mandatory retirement and promotion policy—not two discrete nonpromotion charges." Id. Here, plaintiff has not asserted a class-action pattern or practice ADEA claim. Rather, the rule stated in Chacko, as set forth above, governs the scope of plaintiff's properly exhausted ADEA claim.

Plaintiff argues that he may seek consideration of his termination as a component of damages incurred as a result of defendant's ADEA violations. The court does not preclude plaintiff from seeking consideration of particular events, including plaintiff's March 2019 termination, as a basis for damages on those portions of the ADEA claim that remain. At this juncture in the case, however, it is premature to consider the range of evidence that may be relevant to damages, as there are a number of factors bearing on this determination, including on the issue of whether

reinstatement or front pay is warranted. See, e.g., Duke v. Uniroyal Inc., 928 F.2d 1413, 1423 (4th Cir. 1991) ("The appropriate method for addressing the difficult question of providing a remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole.").

In sum, defendant's motion for judgment on the pleadings is granted in that part where it seeks dismissal of plaintiff's claim, if any, for a violation of the ADEA premised upon plaintiff's March 2019 termination. Plaintiff's ADEA claim, if any, premised upon plaintiff's March 2019 termination is dismissed without prejudice. In so holding, however, the court does not opine on the scope of relevant information that may form the basis for plaintiff's damages for the portions of the ADEA claim that remain.

## CONCLUSION

Based on the foregoing, defendant's motion for judgment on the pleadings (DE 72) is GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiff's ADEA claim premised upon the November 2017 demotion is allowed to proceed. Plaintiff's ADEA claim, if any, premised upon the March 2019 termination is dismissed without prejudice, but without limitation on plaintiff's ability to assert damages for the portions of the ADEA claim that remain.

SO ORDERED, this the 18th day of February, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge